1:20 MJ 9121

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

## Affidavit in Support of Criminal Complaint

I, Paul T. Fregosi, a Special Agent with the Drug Enforcement Administration ("DEA"), United States Department of Justice, being first duly sworn, depose and state under oath as follows:

1. I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), and am empowered by law to conduct investigations of, and to make arrests for, violations of Title 21, United States Code, Sections 841, 843(b), and 846, as well as violations of Title 18, United States Code, Sections 1956 and 1957, and other federal law violations.

2. This affidavit is made in support of a criminal complaint against Carlos SANTOS for:

    a. Possession with Intent to Distribute at least 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B).

## Training and Experience

3. I am employed as a Special Agent with the DEA and have been so employed since February 2017. I am currently assigned to the DEA's Detroit Field Division, Cleveland District Office Group One. Prior to becoming a DEA Special Agent, I was employed with the Milton Police Department (Georgia) for approximately 7 years, and for 4 of those years, I was assigned as a DEA Task Force Officer.

4. Upon joining the DEA, I received approximately 20 weeks of training at the DEA Training Academy in Quantico, Virginia. This training addressed the methods by which drug traffickers possess and distribute controlled substances; the manner and means in which they conceal and launder the proceeds from the distribution of controlled substances; the manner and means in which they protect their proceeds and their controlled substances; and the manner and means by which drug traffickers attempt to avoid law enforcement detection of their activities.

The controlled substances as to which this training applied included, but were not limited to, marijuana, cocaine, heroin, and methamphetamine.

5.    During my law enforcement career, I have participated in numerous search, seizure and arrest warrants pertaining to the seizure of all types of criminal evidence, such as illegal drugs, drug paraphernalia, drug records, drug proceeds, and evidence of other types of crimes and arrests of individuals involved in drug trafficking activities.  I have received training in the enforcement of drug laws, with an emphasis on drug trafficking and drug organizations.  I have participated in multiple drug cases, some of which have been Title III investigations, involving drug trafficking activities and have become familiar with the patterns of activity of drug traffickers, the types and amounts of profits made by drug dealers, and the methods, language, and terms that are used to disguise the source and nature of the profits from their illegal drug dealings.

6.    During my law enforcement career, I have received hundreds of hours in specialized training in the enforcement of the drug laws, the investigation of drug trafficking and drug organizations, in drug recognition and terminology, interviewing techniques, financial/money laundering investigations, and the use of electronic surveillance. I have also participated in numerous drug-related investigations, involving the following types of drugs: heroin, cocaine and cocaine base, methamphetamine and crystal methamphetamine, and marijuana.  I am familiar with and have been involved in all normal methods of investigation, including, but not limited to, visual surveillance, electronic surveillance, informant interviews, interrogation and undercover operations.  I have participated in Title III investigations, including investigations involving Mexican national drug trafficking organizations and drug traffickers.

7.    From my participation in these investigations, I have become familiar with the patterns of activity of drug traffickers, the types and amounts of profits made by drug dealers, and the methods, language, and terms that are used to disguise the source and nature of the profits from their illegal drug dealings.  Based upon my training and experience, interviews conducted with defendants, informants, and other witnesses to, or participants in, drug trafficking and money laundering activity, I am familiar with the ways in which drug traffickers and money launderers conduct their business, including the various means and methods by which drug traffickers import and distribute drugs, and the ways that drug traffickers and money launderers use cellular

telephones, digital display paging devices, and calling cards to facilitate their activity. Drug traffickers and money launderers also use numerical codes and code words to conduct their transactions. In my experience, drug traffickers and money launderers often obtain cellular telephones in fictitious names and/or the names of third parties in an effort to conceal their activities from law enforcement. I am also familiar with the ways in which drug traffickers conceal, convert, transmit, and transport their drug proceeds, including, but not limited to, the use of couriers to transport currency and proceeds, the use of third parties and nominees to purchase or to hold title to assets, and the use of off shore accounts.

8. Similarly, I am aware that drug traffickers routinely use and have at their disposal multiple vehicles registered in fictitious names and/or the names of third parties. In addition to concealing their drug trafficking activities, the use of vehicles in this manner is also an attempt to conceal assets from law enforcement in order to prevent the forfeiture of those assets.

9. In addition, I have consulted extensively with other experienced agents regarding drug trafficking activities. As a result, the knowledge that I have obtained during my law enforcement career has been further informed by other law enforcement agents with experience conducting drug investigations.

## Sources of information

10. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

## Probable Cause

11. On Monday May 11, 2020, Special Agents and Task Force Officers ("investigators") established surveillance at 2011 Willowdale Avenue, Cleveland, Ohio 44109 ("the residence"). Upon establishing surveillance, investigators observed a white 2019 Ford Fiesta passenger car bearing New Jersey registration E54LHN parked in the driveway of the residence. A records check revealed the vehicle is owned by EAN Holdings LLC which is the leasing company to Enterprise Rent-A-Car.

12. At approximately 5:20 p.m., Special Agent (SA) Paul Fregosi observed Carlos SANTOS exit the front door of the residence. SA Fregosi observed SANTOS was wearing gray

sweatpants and a white t-shirt.  SA Fregosi observed SANTOS enter the driver's seat of the Ford Fiesta.  Upon entering the vehicle, SANTOS leaned over the center console toward the front passenger seat.  SANTOS returned upright and reversed out of the driveway.  Investigators subsequently established mobile surveillance of SANTOS.

13. Investigators followed SANTOS as he traveled southbound on highway 176 to eastbound I-480.  SANTOS continued eastbound until merging onto I-271 in a south southeast direction. SANTOS exited I-271 and began to travel southbound on I-77.  During this time, investigators began to coordinate with the Ohio State Highway Patrol (OSHP) to conduct a traffic stop on the vehicle.

14. Upon exiting off of I-77 southbound toward I-76 westbound, OSHP Trooper Anderson located the Ford Fiesta and conducted a probable cause traffic stop on the vehicle for speeding and failure to utilize a turn signal. Upon Trooper Anderson making contact with the driver of the vehicle, SANTOS could not provide identification.  At this time, OSHP K-9 Trooper Kelly and Trooper Baker arrived on scene. Trooper Anderson requested SANTOS exit the vehicle and enter the Trooper's vehicle for further investigation. Meanwhile Trooper Kelly and his K-9 partner Xaro conducted an open air sniff around the vehicle.  Trooper Kelly's K-9 partner Xaro alerted to the presence of illegal contraband on the vehicle.

15. Troopers Kelly and Baker conducted a probable cause search of the vehicle.  Troopers located a clear ziplock bag containing an off white crystalline substance behind a panel on the passenger side of the vehicle near the center console.  Troopers placed SANTOS in handcuffs and read SANTOS his Miranda Warnings.  SANTOS admitted to Troopers he was speeding and failed to use his turn signal.  SANTOS further admitted to knowledge and possession of the suspected crystal methamphetamine.

16. Based upon SA Fregosi's training and experience, the off white crystalline substance appeared to be crystal methamphetamine.  SA Fregosi conducted a field test of the substance utilizing a NARK II field test.  The field test yielded a presumptive positive for methamphetamine.  Methamphetamine is a Schedule II controlled substance.  The suspected crystal methamphetamine had a gross weight of approximately 171 grams.

17. SA Fregosi and Task Force Officer (TFO) Stranahan arrived on scene of the traffic stop and spoke with SANTOS. Investigators informed SANTOS they had been watching SANTOS and observed him leaving the residence. Investigators advised SANTOS they wanted to gain his cooperation and requested he allow investigators to conduct a consent search at his residence. SANTOS verbally agreed to cooperate with investigators.

18. SANTOS was transported by TFO Stranahan from the traffic stop to the residence. While in route to the residence, SANTOS informed TFO Stranahan that he possessed an indoor marijuana grow on the 2nd floor of the residence containing approximately 100 plants.

19. Upon arriving at the residence, SANTOS provided written and verbal consent to investigators to search the residence. SANTOS walked investigators up to the front door of the residence and used a key to open the door. Upon entering the residence, SA Fregosi detected an odor of raw marijuana emanating inside. SANTOS pointed to a silver revolver sitting in plain sight in the bedroom adjacent to the front door.

20. SANTOS then walked investigators up to the 2nd floor of the residence and opened the locked door. Upon entry to the 2nd floor, investigators observed 2 separate rooms filled with suspected marijuana plants. Investigators observed a sophisticated indoor cultivation system to include indoor lighting, ventilation, and irrigation system.

21. Investigators continued the search of the residence and seized the silver revolver sitting on the bed in the first floor bedroom, further described as a Taurus .357 revolver bearing serial number KP31807. The revolver was loaded with 5 rounds of .357 caliber ammunition.

22. Investigators then located a Taurus G2C 9mm semi-automatic pistol bearing serial number ABA207685. The pistol was found with a magazine loaded with 8 rounds of 9mm ammunition. The pistol was located above the tile in the drop ceiling of the main bedroom.

23. The recovered Taurus firearms are likely manufactured outside the State of Ohio, since no Taurus firearms are manufactured within the State of Ohio.

24. SA Fregosi asked SANTOS about the firearms located. SANTOS denied knowledge of the firearm located in the ceiling. SANTOS claimed possession of the revolver stating he had purchased it "from the streets." SANTOS advised he possessed the weapon for personal

protection.  SA Fregosi has reviewed a criminal history for SANTOS which revealed SANTOS is a convicted felon prohibited from possessing a firearm, having been convicted of crime(s) punishable by imprisonment for a term exceeding one year.

25. Upon completion of the consent search, investigators seized approximately 106 suspected marijuana plants.

## Conclusion

26. Based upon the evidence and the facts set forth in this affidavit, I submit that there is probable cause to believe that, on or about May 11, 2020, in the Northern District of Ohio, Eastern Division, Carlos SANTOS Possessed with Intent to Distribute at least 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B).

Further Your Affiant Sayeth Not

_____
Paul T. Fregosi
Special Agent
Drug Enforcement Administration

SUBSCRIBED AND SWORN TO ME THIS 13TH DAY OF MAY, 2020
VIA TELEPHONE AFTER SUBMISSION BY RELIABLE ELECTRONIC
MEANS. FED. R. CRIM. P. 4.1 and 41(d)(3).

William H. Baughman, Jr.
United States Magistrate Judge
Northern District of Ohio

